IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYDIA MONHEIM, Administratrix of the ESTATE OF ANDREW MONHEIM, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 10-913 |
| v. | ) ) ) | |
| UNION RAILROAD COMPANY, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

*I. Introduction*

Defendant Union Railroad Company ("defendant" or "Railroad") filed a motion to dismiss (ECF No. 32) the amended complaint filed by plaintiff Lydia Monheim, Administratrix of the Estate of Andrew Monheim ("Estate"). (ECF No. 21.) The Railroad seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted.

*II. Factual[1] and Procedural Background*

On March 16, 2010, Andrew Monheim ("Monheim"), employed as a locomotive engineer by the Railroad, operated a northbound freight train near North Versailles Township, Pennsylvania. (Am. Compl. ¶ 12.) At approximately 4:30 a.m., Monheim's train struck another train. (Id. ¶ 14.) Monheim was ejected from the train and subsequently buried under the cargo

---

[1] The factual background is taken from the factual allegations of the amended complaint and, for the purposes of resolving the motion to dismiss, are considered to be true. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d. Cir. 2002).

of one of the trains containing several tons of iron ore pellets. (Am. Compl. ¶ 15.) The Railroad contacted an emergency response team one hour after the accident. (Id. ¶ 52.)

The Estate commenced a negligence suit against the Railroad under the Federal Employer's Liability Act, as amended, 45 U.S.C. §§ 51 *et seq*. ("FELA"). (Am. Compl. ¶ 5.) The Estate also brought multiple claims pursuant to the Federal Locomotive Inspection Act, as amended, 49 U.S.C. §§ 20701 *et seq*. ("LIA"), alleging violations of the Federal Railroad Administration ("FRA")[2] guidelines, 49 C.F.R. §§ 200 *et seq.*, and the Federal Safety Appliances Act, as amended, 49 U.S.C. §§ 20301 *et seq*. ("FSAA").[3] Id.

A violation of the FRA guidelines constitutes a violation of the LIA. Oglesby v. Delaware & Hudson Ry. Co., 180 F.3d 458, 460 (2d Cir. 1999). A violation of the LIA constitutes negligence *per se* under FELA. Urie v. Thompson, 337 U.S. 163, 189 (1949). Under the LIA, the Estate asserts the train was defective in the following ways: (1) an unsafe and defective seat; (2) an improperly operating radio; and (3) the absence of an alerter or deadman's switch. (Am. Compl. ¶¶ 71-74.) The Estate asserts the Railroad violated FRSA under 49 C.F.R. § 236 due to a malfunctioning railroad signal. Under FELA, the Estate alleges that the Railroad failed to respond promptly to the accident. (Id. ¶¶ 47-54.) The Estate contends the Railroad did not have sufficient personnel and tools to rescue Monheim and the Railroad did not contact emergency personnel in a timely manner. (Id.) The Estate alleged that the locomotive was not wired for cab signals, (id. ¶ 39), and the Railroad's radio dispatcher failed to maintain contact with Monheim prior to the collision. (Id. ¶ 45.) The Estate additionally claimed under the FELA

---

[2] The Federal Railroad Safety Act, as amended, 49 U.S.C. § 20103(a) ("FRSA"), gives the Secretary of Transportation the authority to prescribe regulations for every area of railroad safety to supplement laws and regulations.

[3] The parties agreed to dismiss the Estate's FSAA claim without prejudice. (Stipulation of Dismissal (ECF No. 20).) The court approved the dismissal in an Order dated November 9, 2010. (ECF No. 22.)

that Monheim was not properly trained to operate a locomotive lacking an alerter or deadman's switch, (Am. Compl. ¶¶63-68) and that the Railroad failed to provide an additional person in the locomotive (id. at ¶¶24-30).

The Railroad argues that any negligence claims brought by the Estate are not cognizable under the FELA, are otherwise precluded by the LIA or would be inadmissible additions to the requirements of the FRSA, which govern the FRA guidelines. In the alternative, the Railroad moved, under Rule 12(e) of the Federal Rules of Civil Procedure, for a "more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

The court held a hearing on February 3, 2011, regarding the motion to dismiss. As set forth on the record, the court dismissed with prejudice the failure to have an alerter or deadman's switch claim, the failure to have an ejection-proof seat claim, and the failure to have a different signal claim because allegations of "design defect" or "failure to install" are preempted by the LIA and not cognizable under the FELA. The claim for negligence for failure to maintain properly the locomotive's radio remained under the FELA. The malfunctioning signal claim survived under the FRSA and FELA. The dispatcher negligence claim survived as a FELA claim, and the negligent failure to respond to the collision claim survived under the FELA. This memorandum opinion sets forth the reasons for the court's decision to grant in part and deny in part the motion to dismiss.

### *III. Standard of Review*

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to

dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Factual allegations must be enough to raise a right to relief above the speculative level, and must be sufficient to state a claim for relief that is plausible on its face. Id.

> A claim has facial plausibility when the plaintiff pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Twombly], 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted).

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Two working principles underlie Twombly. Id. at 1949-50. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a claim's elements, supported by mere conclusory statements. Id. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (citing FED. R. CIV. P. 8(a)(2)).

A court considering a motion to dismiss may begin by identifying allegations that are mere conclusions and not entitled to the assumption of truth. "While legal conclusions can

provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Leave to amend pleadings is generally at the discretion of the trial court, Foman v. Davis, 371 U.S. 178, 182 (1962), and shall be given when justice so demands. FED. R. CIV. P. 15(a); see Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1999). The denial of an opportunity to amend is appropriate, however, when the futility of amendment is apparent. Foman, 371 U.S. at 182.

## *IV. Discussion*

The LIA supplements the FELA, which was enacted to facilitate employee recovery. Urie v. Thompson, 337 U.S. 163, 188 (1949).[4] The FELA allows recovery in a broad range of situations, while liability under the LIA occurs under more narrow circumstances. King v. Southern Pacific Transp. Co., 855 F.2d 1485, 1489 n.1 (10th Cir. 1988). The FELA covers any injury caused "in whole or in part from the negligence of" the carrier, Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506-07 (1957), while the LIA focuses upon "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." Napier v. Atlantic Coast Line R. Co. 272 U.S. 605, 611 (1926). Proof that a defendant railroad violated the LIA establishes negligence *per se* under the FELA and subjects a railroad to strict liability. Urie, 337 U.S. at 189; see Coffey v. Northeast Ill. Regional Commuter R. Corp., 479 F.3d 472, 477 (7th Cir. 2007).

---

[4] The Court in Urie considered the Boiler Inspection Act, which is now the LIA. See Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 401 n.3 (3d Cir. 2010) ("The LIA was originally known as the Boiler Inspection Act, or BIA, and is referred to as such in much of the case law cited . . . . We simply note that this is a distinction without a difference, and both terms refer to 49 U.S.C. § 20701, *et seq*.").

To prevail on a LIA claim, a plaintiff must show that the locomotive failed to comply with a regulation issued by the FRA, or that the locomotive was not "in proper condition" and could not be safely operated "without unnecessary danger of personal injury." Oglesby, 180 F.3d at 460.[5] A railroad carrier *cannot* be held liable under the LIA for failure to install equipment on a locomotive *unless* the omitted equipment (1) is required by applicable federal regulations, or (2) constitutes an integral or essential part of a completed locomotive. Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir. 1987); see McGinn v. Burlington N. R.R. Co., 102 F.3d 295, 299 (7th Cir. 1996). Compliance with the LIA preempts claims pertaining to the design and construction of locomotives, as well as equipment selection and installation. Kurns, 620 F.3d at 397; Southern Ry. Co. v. Lunsford, 297 U.S. 398, 402 (1936); see Mosco, 817 F.2d at 1091 (LIA does not require the installation of every item of equipment that conceivably could be installed on a locomotive.).

Compliance with FRA regulations also precludes a claim under the FELA. Tucker v. BNSF Ry. Co., No. 06-395, 2008 WL 3286748, at *2 (E.D. Cal. Aug. 6, 2008); see Waymire v. Norfolk & Western Ry., 218 F.3d 773, 775 (7th Cir. 2000) (unsafe speed claim); Dickerson v. Staten Trucking, Inc., 428 F. Supp. 2d 909, 913 (E.D. Ark. 2006) (precluding claim for failure to provide seatbelts and padding); Sindoni v. Consol. Rail Corp., 4 F. Supp. 2d 358, 365 (M.D. Pa. 1996) (same for crashworthiness).

### *A. Preemption by LIA and FRSA*

The Estate alleges that Monheim may have become incapacitated or physically unable to control and operate the train at some point before the collision. (Def.'s Mem. (ECF No. 33) ¶ 1.)

---

[5] Courts confronting issues of "in proper condition" and "without unnecessary danger of personal injury" under the LIA typically conclude that those issues present questions of fact for the jury to decide at a trial. See, e.g., Gregory v. Missouri Pac. R.R. Co., 32 F.3d 160, 162 n.6 (5th Cir. 1994) (collecting decisions).

The Estate asserts that if the train was equipped with an alerter or deadman's switch, it would have been automatically brought to a stop and the collision would not have occurred or would have occurred at a lower speed if Monheim became physically unable to control or operate the train. (Am. Compl. ¶¶ 20-22.) The Estate argues that the Railroad includes alerters or deadman's switches on other locomotives because these devices are essential or integral to a locomotive. (Am. Compl. ¶ 20.) The Estate alleges the Railroad did not provide a locomotive with seats that would prevent the ejection of a crew member from the train (Am. Compl. ¶ 58), and the Railroad's failure to wire the track for cab signals was negligent and caused the collision and Monheim's death. (Am. Compl. ¶¶ 39-40.) The Railroad maintains the Estate is asserting "design" or "failure to install claims" not cognizable under the LIA, and any FELA claims based on these allegations are precluded by the LIA and the FRSA.

Generally, the "essential or integral" argument has failed in other courts of appeals which addressed a plaintiff's "failure to install" claim under the LIA. McGinn, 102 F.3d at 299; see, e.g., King, 855 F.2d at 1490 (holding that armrests are not an integral or essential part of locomotive, even though they were uniformly installed on the defendant's other locomotives and the defendant agreed to install them); Mosco, 817 F.2d at 1091 (holding that bars, grates or other protective window devices are not integral or essential devices); Marshall v. Burlington Northern, Inc., 720 F.2d 1149, 1154 (9th Cir. 1983) (holding that strobe and oscillating lights are not integral or essential warning devices).

Numerous federal courts of appeals considering this issue have held that the FRSA precludes a FELA claim when an FRA regulation covers the subject matter of that claim and the claim would impose additional duties on the railroad beyond those contemplated by the applicable regulation. Nickels v. Grand Trunk Western R.R., 560 F.3d 426, 430 (6th Cir. 2009);

7

Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir. 2001); Waymire v. Norfolk & W. Ry., 218 F.3d 773, 776 (7th Cir. 2000); cf. Norris v. Cent. of Ga. R.R. Co., 635 S.E.2d 179, 182 (Ga. Ct. App. 2006) ("This court and others have concluded that the FRSA may preclude a FELA claim under an analysis that FELA is a negligence-based statute, and like state common law negligence claims, FELA negligence claims may not be used to impose duties beyond those imposed by Congress or the FRA."); Norfolk S. Ry. v. Denson, 774 So. 2d 549, 556 (Ala. 2000). Likewise, several federal district courts considering the issue prior to or in the absence of a definitive ruling by the court of appeals for their circuit have held that a FELA claim may be preempted by compliance with the FRSA. See, e.g., McCain v. CSX Transp., Inc., 708 F. Supp. 2d 494, 504 (E.D. Pa. 2010) (portion of plaintiff's FELA claims falling under applicable FRSA regulations are precluded).

Adding an alerter or a deadman's switch on a non-passenger train is above and beyond the requirements of the FRA regulations. 49 C.F.R. § 238.237. The failure to add those devices does not violate the LIA, and, therefore, no cognizable claim exists under the FELA . Similarly, the FRA regulations do not mention "cab signals," and the Estate's claim for failure to install an item not required by federal regulations is precluded. McGinn, 102 F.3d at 299.

While the FRA regulations require that a seat must be "secure," there is no requirement that the seat be ejection proof. See Oglesby, 6 F.3d at 1154 (violation of LIA could not be established by mere showing that engineer's seat in locomotive engine was not working properly; violation could only be established by proof that alleged defects were unsafe). The FRSA "securely mounted and braced" seat requirement does not mean "fixed in place" or "immovable," but only that the seat be securely attached and supported. Sandstrom v. Chicago & N.W. Transp. Co., 907 F.2d 839, 840 (8th Cir. 1990).

8

The Estate's claims regarding the Railroad's failure to have an alerter or deadman's switch, a cab wired for signal, and an eject-proof seat are dismissed with prejudice because allegations of design defect or failure to install are preempted by the LIA and, thus, are not cognizable under the FELA. Kurns, 620 F.3d at 397; Mosco, 817 F.2d at 1091.

### B. Failure to maintain properly a radio

The Estate alleges negligence for failure to maintain properly an operating radio under 49 C.F.R. § 220.9(a). (Am. Compl. ¶ 74.) A locomotive must have a functioning radio. 49 C.F.R. § 220.9(a). The FRA regulations mandate tests for radio equipment, 49 C.F.R. § 220.37, and prescribe actions to be taken for a nonfunctioning radio as well as a radio discovered to be nonfunctioning while a locomotive is en route. 49 C.F.R. §§ 220.37-38.

A railroad "has an absolute and continuing duty to provide and maintain its locomotive and the attached apparatus and appurtenances so as to provide a safe place to work for its employees." Heiselmoyer v. Penn. R.R., Co., 243 F.2d 773, 776 (3d Cir. 1957). A radio housed in the locomotive constitutes a part or appurtenance of the locomotive. Varney v. Norfolk & W. Ry. Co., 899 F. Supp. 280, 281 (S.D.W. Va. 1995). A malfunction of the installed radio could create liability under the LIA. Id.; see Seaboard Coast Line R. Co. v. Jackson, 256 So. 2d 568, 570 (Fla. Dist. Ct. App. 1971) (radio was clearly a "part and appurtenance").

Accepting as true all well-pled factual allegations in the amended complaint and viewing them in a light most favorable to the plaintiff, if the radio on Monheim's locomotive was nonfunctioning or was not maintained properly, the Railroad may be liable under the LIA. The negligence claims for improper monitoring and failure to maintain properly the locomotive's radio survives the motion to dismiss because under FELA there is a plausible claim the LIA was violated due to the radio being considered an appurtenance under the LIA.

9

### C. Malfunctioning signal claim under the FRSA

The Estate asserts that, as a result of the Railroad's negligence, the rail signal system was defective, malfunctioned, and improperly monitored, which caused the accident and Monheim's death. (Am. Compl. ¶ 38.) The Estate argues that the signal system failure and the failure to monitor properly the signal system violated one or more of the regulations set forth in 49 C.F.R. § 26. (Am. Compl. ¶ 39.)

Railroad signals are covered under the FRSA, Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 358-59 (2000), and any portion of a FELA negligence claim that is based on the signal system's design and operation is preempted if the signal meets FRSA standards. See Major v. CSX Transp., 278 F. Supp. 2d 597, 611 (D. Md. 2003). A signal is not covered under the LIA, as the LIA only "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." Napier, 272 U.S. at 611.

Once signals are installed and operating, they are only held to the requirements of the FRSA. Shanklin, 529 U.S. at 353-55. If, as the Estate contends, the signals failed or malfunctioned, the Estate may have a negligence claim under FELA if that failure caused the train wreck. To the extent the FELA claim regarding signals is one of design, it is preempted if the signal meets FRSA standards. Major, 278 F. Supp. 2d at 611. The Estate pleaded a plausible negligence claim upon which relief can be granted with respect to the Railroad's failure to maintain properly a signal under FELA and the FRSA. The motion to dismiss regarding those claims is granted with respect to a claim that the signal was defectively designed or there was a failure to install a type of signal not required by FRSA. In other respects, the motion to dismiss the negligence claims with regard to the signal is denied.

### D. Dispatcher negligence claim under FELA

The Estate argues that the Railroad dispatcher negligently failed to alert Monheim to the presence of the other train with his radio, which caused the accident and Monheim's death. (Am. Compl. ¶ 45.) The Estate alleges that the Railroad radio dispatcher did not monitor properly the signal system and did not alert Monheim to the presence of the other nearby train. (Id. ¶ 46.) Because the radio dispatcher failed to monitor properly the signal system, the Estate alleges Monheim's train struck another train, resulting in his death. (Id.) The Estate pleaded a plausible claim upon which relief can be granted with respect to the Railroad's failure to alert properly the presence of the other train via radio under the FELA. The motion to dismiss that claim is denied.

### E. Negligent failure to respond to the collision claim under FELA

The Estate alleges that "Monheim did not die immediately after the accident and the railroad's delay resulted in conscious physical and emotional pain and suffering between the time of the accident and Mr. Monheim's death." (Pl.'s Mem. in Opp'n. (ECF No. 39) at 12-13.) The Estate alleges the Railroad failed to respond promptly to the accident and failed to have necessary and sufficient personnel, tools and equipment to rescue Monheim. The Estate contends these failures caused the rescue to be delayed, resulting in Monheim's physical and mental pain and suffering, and his death. (Am. Compl. ¶ 53.) The Estate brings this negligence claim under the FELA.

The Estate argues a railroad can be liable under the FELA for failing to provide sufficient rescue personnel and equipment and failing to contact promptly trained rescue personnel. (Pl.'s Mem. in Opp'n at 13.) The Estate cites Powers v. New York C. R.R. Co., 251 F.2d 813 (2d Cir. 1958), wherein the Court of Appeals for the Second Circuit "found the railroad negligent for

failing to have blankets, inhalator, pulmotor, stretcher, life-saving equipment and failing to provide a heated room to which [the decedent] could be removed." Id. at 817. The court concluded:

> [The jury] found other failures on the part of the railroad which were the proximate cause of [the decedent's] death[.] [N]amely, failure to conserve his body heat, failure to summon the New York City Police Emergency Squad (which could have brought all the necessary life-saving equipment to the scene in a few minutes) and failure to maintain trained life-saving and first-aid personnel and [failure to have] a first-aid station.

Id.

The Railroad counters that with the exception of a "heat sensing device," the Estate has not specified any other tools and equipment that were necessary for a proper rescue response. The Railroad argues it cannot prepare or frame a proper, fact specific defense to these claims without more specificity. (Def.'s Mot. to Dismiss (ECF No. 32) ¶ 18c.)

Under FELA, a railroad's failure to have certain rescue equipment may constitute negligence, as may the failure to summon trained rescue personnel. Powers, 251 F.2d at 817. The Estate pleaded a plausible claim upon which relief can be granted with respect to the Railroad's failure to have certain rescue equipment and failure to contact promptly trained rescue personnel to respond to the collision under the FELA. The motion to dismiss regarding those claims is denied.

### F. *Claims dismissed without prejudice*

A complaint must provide more than labels and conclusions. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Claims under the FELA that Monheim was not properly trained to operate a locomotive lacking an alerter or deadman's switch, (Am. Compl. ¶¶ 63-68), and that the Railroad failed to provide an additional person in the locomotive, (id. ¶¶ 24-30), are

12

dismissed without prejudice because the allegations in the amended complaint supporting them consisted of only labels and conclusions.  Any claim under the LIA that Monheim's seat was not securely mounted or braced under the LIA, to the extent that it is not a failure to install or a defective design claim, is dismissed without prejudice because the allegations in the amended complaint supporting them consist of only labels and conclusions and are not sufficiently plead.

*V. Conclusion*

Accepting as true all well-pled factual allegations in the amended complaint and construing them in a light most favorable to the Estate, claims regarding the failure to have an alerter or deadman's switch, the failure to have an ejection proof seat, and the failure to have a cab wired for signal are dismissed with prejudice because allegations of "design defect" or "failure to install" are pre-empted by the LIA and the FRSA and are not cognizable under the FELA.   The negligence claim asserted under the FELA for failure to maintain properly the locomotive's radio, the malfunctioning signal claim asserted under the FRSA and FELA, the dispatcher negligence claim asserted under the FELA, as well as the negligent failure to respond to the collision asserted under the FELA survive the motion to dismiss.  The claims that Monheim was not properly trained to operate a locomotive lacking an alerter or deadman's switch asserted under the FELA, that the Railroad failed to provide an additional person in the locomotive asserted under the FELA, and any claim that Monheim's seat was not securely mounted or braced asserted under the LIA, to the extent that it is not a failure to install or a defective design claim, are not sufficiently plead and will be dismissed without prejudice.  An appropriate order will follow.

Date: April 20, 2011

By the court:
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge